UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JANERIO DWONNE BELL,

    Plaintiff,

v().                                               Case No:   6:16-cv-218-Orl-41TBS

JAMES C. HALL, INC. and JAMES C.
HALL,

    Defendants.

_____

### REPORT AND RECOMMENDATION

Pending before the Court is the parties' Joint Motion for Approval of Settlement Agreement (Doc. 34). The parties request the Court's approval of their proposed settlement of this Fair Labor Standards Act ("FLSA") case brought by the named Plaintiff, Janerio Dwonne Bell and six opt-in Plaintiffs: Robert Pernell Anderson, Tavaren Devone Latimer, Thomas J. Rogers, Edgar Bass III, Robert L. Griffin, Jr., and Wesley L. O'Neal. I have examined the motion and the settlement agreement (Doc. 34; Doc. 34-1), and for the reasons set forth herein, I respectfully recommend that the motion be **granted**.

### Background

On February 9, 2016, Mr. Bell filed his collective action complaint in which he sued his former employers James C. Hall, Inc. and James C. Hall, individually, (collectively "Defendants") for unpaid overtime compensation under the FLSA, pursuant to 29 U.S.C. § 216(b) (Doc.1). The corporate defendant is a construction company that performs asphalt repair and paving and the individual defendant is engaged in this business (Id. ¶¶ 23-24). The Plaintiffs are laborers who were hired by Defendants and employed on an hourly basis to lay asphalt and perform repairs and sealcoating (Id. ¶¶ 25, 27). Plaintiffs

argue that throughout their employment, they routinely worked in excess of forty hours in a workweek (Id. ¶¶ 26, 29, 32, 43). Plaintiff further argues that the corporate defendant

> [H]ad a companywide policy that applied to all its Laborers which provided that Laborers would cease being paid upon leaving the last jobsite of the day. As a result of this policy, the Laborers were not paid for their return travel time to Defendant's premise and the work performed by the Laborers once they returned to the Defendant's premise.
>
> . . . .
>
> Defendant [also] had a policy of automatically deducting a one hour lunch break from all Laborers [sic] hours each workday. Defendant James C. Hall, Inc., automatically deducted a one hour lunch break each workday from all Laborers even when a lunch break was not taken or had been uninterrupted.

(Id. ¶¶ 28, 30-31). Plaintiffs maintain that Defendants were aware of the excessive hours worked but failed to ensure that Plaintiffs "were being compensated appropriately pursuant to the FLSA" (Id. ¶ 34). Defendants admit they employed Plaintiffs but deny all other allegations (Doc. 20). On August 5, 2016, the parties advised the Court that they had reached an agreement to resolve this dispute (Doc. 34).

## Legal Standard

In the Eleventh Circuit, an FLSA claim can be settled and resolved in two ways. First, an employee may settle and waive claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. 29 U.S.C. § 216(c); Lynn's Food, 679 F.2d at 1353 (11th Cir. 1982). Second, an employee may settle and waive claims under the FLSA if the parties present to a district court a proposed settlement agreement, and the district court approves the settlement. Lynn's Food, 679 F.2d at 1353.

Before approving a settlement, the district court must first scrutinize the parties' agreement and determine whether it is a "fair and reasonable resolution of a bona fide

dispute" of the FLSA issues. Id. at 1354-55. If the settlement reflects a reasonable compromise of issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement in litigation." Id. at 1354. The nature of this lawsuit prompts the district court's review of the parties' settlement agreement rather than an examination conducted by the Secretary of Labor. My assessment of fairness is guided by prevailing case law in this Circuit, including Fiber Moreno v. Regions Bank, 729 F. Supp. 2d 1346 (M.D. Fla. 2010).

## Discussion

### A. Settlement Sum

In his answers to the Court's interrogatories, Mr. Bell asserted his entitlement to $9,007.50 in compensatory damages, plus liquidated damages (Doc. 25-1 at 3). Each of the op-in Plaintiffs claimed damage amounts that ranged from $5,040.00 to $17,086.05, plus liquidated damages (Doc. 26-1 at 3; Doc. 27-1 at 2; Doc. 28-1 at 2; Doc. 29-1 at 3; Doc. 30-1 at 2).[1] All Plaintiffs have agreed to settle their claims for a total sum of $29,500.00, to be disbursed as follows:

- Bell = $2,750 (actual damages) + $2,750 (liquidated damages)
- Anderson = $1,250 (actual damages) + $1,250 (liquidated damages)
- Latimer = $4,250 (actual damages) + $4,250 (liquidated damages)
- Rogers = $1,250 (actual damages) + $1,250 (liquidated damages)
- Bass = $1,250 (actual damages) + $1,250 (liquidated damages)
- Griffin = $1,250 (actual damages) + $1,250 (liquidated damages)

---

[1] Opt-In Plaintiff Robert Griffin filed his Notice of Consent to Join on June 28, 2016 - three and a half months after the other opt-in Plaintiffs filed their notices (Doc. 31). Mr. Griffin did not file answers to the Court's interrogatories prior to the filing of the parties' joint settlement agreement.

- O'Neal = $2,750 (actual damages) + $2,750 (liquidated damages)

(Doc. 34-1 at 2, 8, 14, 20, 26, 32, 38)

The parties agree that they have a bona fide dispute and that they are resolving this matter through settlement in order to avoid the cost and time of litigating the issues and the risks associated with protracted, expensive, and uncertain litigation (Doc. 34 at 4). I find no evidence in the record of fraud or collusion in the making of the settlement or the amount. Nothing in the record causes me to believe the settlement amount was not negotiated at arm's length and in good faith. Accordingly, I respectfully recommend that the district court find the proposed settlement sum is reasonable.

### B. General Release

The settlement agreement includes a general release of Defendant from any and all claims relating to or arising out of Plaintiffs' employment (Doc. 34 at 5; Doc. 34-1 at 2, 8, 14, 20, 26, 32, 38). General releases in FLSA cases are frequently viewed as "'side deals' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and therefore, such releases "confer[ ] an uncompensated, unevaluated, and unfair benefit on the employer." Moreno, 729 F. Supp. 2d at 1351-52. Therefore, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." Id. at 1352. But, a settlement agreement that provides a plaintiff with independent, valuable consideration in exchange for a general release may be accepted by the Court. See Kingsley v. Noonan, No. 6:12-cv-500, 2012 WL 3151572, at 1-2 (M.D. Fla. Aug. 2, 2012); see also Pavlosky v. Winghouse XI, LLC, Case No. 6:12-cv-1711, 2014 U.S. Dist. LEXIS 56436, at *4-5 (M.D. Fla. April 22, 2014). As the Court explained in Capers v. Noah's Ark Repair Serv., Inc.,

> [A]n FLSA settlement that contains a pervasive release or which restricts a Plaintiff's First Amendment rights will typically not survive judicial scrutiny. But, in this circumstance both the release and non-disparagement clause are mutual, and thus also confer a benefit upon Plaintiff. Accordingly, I find that the Agreement does not confer an "uncompensated, unevaluated, and unfair benefit on the employer," and is a fair compromise.

No. 6:11-cv-457-Orl-28TBS, 2013 WL 3153974, at *3 (M.D. Fla. June 19, 2013) (internal citations omitted). Defendants have agreed to pay *each* Plaintiff an additional $857.15 in exchange for the general releases (Doc. 34-1 at 2, 8, 14, 20, 26, 32, 38).[2] Because the release is supported by meaningful consideration that is separate and apart from the settlement sum, I respectfully recommend that the district court find that it does not preclude approval of the settlement.

### C. Non-Disparagement Clause

Generally, courts throughout this Circuit have struck non-disparagement provisions in FLSA settlement agreements, finding "them to constitute a judicially imposed prior restraint in violation of the First Amendment." Nichols v. Dollar Tree Store, Inc., Case No. 1:13-cv-88 (WLS), 2013 U.S. Dist. LEXIS 156754, at *10-11 (M.D. Fla. Nov. 1, 2013); see also Valdez v. T.A.S.O Props., Case No. 8:09-cv-2250-T-23TGW, 2010 U.S. Dist. LEXIS 47952, at *4 n.1 (M.D. Fla. April 28, 2010). However, Courts have upheld non-disparagement clauses that benefit employers where there has been a reciprocal agreement to provide a neutral reference, which inures to the benefit of the plaintiff. See Caamal v. Shelter Mortg. Co., LLC, No. 6:13-cv-706-Orl-36KRS, 2013 WL 5421955, at *4 (M.D. Fla. Sept. 26, 2013); Martini v. Bridgewater Inn of Matlacha, LLC, Case No. 2:15-cv-658-FtM-38CM, 2016 WL 3556803, at * 2 (M.D. Fla. June 9, 2016) (citing Buntin v.

---

[2] Although the reasons are unknown to the Court, Plaintiff Bell is receiving one cent more than his co-Plaintiffs, as he is set to receive $857.15 in exchange for his release (Doc. 34-1 at 2).

- 5 -

Square Foot Mgmt. Co., LLC, 6:14-cv-1394-Orl-37GJK, 2015 W:L 3407866, at *2 (M.D. Fla. May 27, 2015) (approving a settlement agreement that contained a general release because it was exchanged by a mutual general release and a neutral reference by employer)). The parties have included the following non-disparagement clause in their agreement:

> 7. NON-DISPARAGEMENT. The parties agree that they will not now or in the future: (a) talk about or otherwise communicate to any third party in a malicious, disparaging or defamatory manner regarding each other, or (b) make is [sic] authorize to be made any written or oral statement that may disparage the reputation of each other.

(Doc. 34-1 at 4, 10, 16, 22, 28, 34, 40). This clause is for the mutual benefit for al parties. Therefore, I respectfully recommend that the district court find that it does not preclude approval of the settlement.

### D. Attorney's Fees

The parties represent that the $17,000 in attorney's fees and costs to be paid to Plaintiff's counsel was negotiated separately from Plaintiff's recovery, and without regard to the amount of the settlement sum (Doc. 34 at 6; Doc. 34-1 at 2-3, 8-9, 14-15, 20-21, 26-27, 32-33, 38-39). This is sufficient to establish the reasonableness of the fees and that Plaintiff's recovery was not adversely affected by the amount of fees paid to counsel. See Bonetti v. Embarq Management Co., 715 F. Supp. 2d 1222 (M.D. Fla. 2009); see also McQuillan v. H.W. Lochner, Inc., No. 6:12-cv-1586-Orl-36TBS, 2013 WL 6184063, at *3 (M.D. Fla. Nov. 25, 2013).

### Recommendation

Upon consideration of the foregoing, I respectfully recommend that the Court **grant** the parties' Joint Motion for Approval of Settlement (Doc. 34) and **dismiss this case with prejudice**.

### Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on August 16, 2016.

*[signature]*
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record